CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

DEC 11 2018

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

VIRGINIA INDUSTRIAL, )
PLASTICS, INC., )
 )
 Plaintiff, )
 ) Civil Action No. 5:18-cv-00119
v. )
 )
CABINET SAVER LLC, )
 )
 Defendant. ) By: Michael F. Urbanski
 ) Chief U.S. District Judge

## MEMORANDUM OPINION

This matter comes before the court on Plaintiff Virginia Industrial Plastics, Inc.'s (VIP) motion to dismiss Defendant Cabinet Saver LLC's (CS) counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6), filed on November 19, 2018. CS has filed no response to this motion.

For the reasons explained below, the court **GRANTS** VIP's motion to dismiss CS's counterclaims.

I.

VIP filed its complaint against CS on September 12, 2018. ECF No. 1. This suit arises from the use of the name "Cabinet Savers," used by both parties to refer to plastic liners designed to protect kitchen sink cabinets and other surfaces from water damage. ECF No. 1, ¶ 13; ECF No. 7, 2. Both parties manufacture products of this description. ECF No. 1, ¶ 13; ECF No. 7, 2. VIP owns United States Trademark Registration No. 5,426,605 for the use of the "Cabinet Saver" mark (the Mark), filed with the United States Patent and

Trademark Office (USPTO) on July 14, 2017. ECF No. 1, ¶ 7; ECF No. 7, 1. In its complaint, VIP alleges trademark infringement, false association/false endorsement, false designation of source and/or origin, and unfair competition against CS. ECF No. 1.

In its answer to the complaint, CS brings two counterclaims: trademark infringement by VIP and unfair competition by VIP. ECF No. 7. CA claims that it was using the mark "Cabinet Saver" in commerce before VIP began using it, and that VIP knew of CS's use and "adopted the Mark in an attempt to hijack the Mark, cause confusion as to the source of goods and services provided under the Mark, and to interfere with Cabinet Saver's use of the Mark." ECF No. 7, 1.

## II.

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must plead sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007). A plaintiff establishes "facial plausibility" by pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In ruling on a 12(b)(6) motion, the court must accept all well-pleaded allegations in the complaint as true and draw all reasonable factual inferences in the light most favorable to the plaintiff. Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678; see Wag More Dogs,

LLC v. Cozart, 680 F.3d 359, 365 (4th Cir. 2012) (holding the court "need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments") (internal quotation marks omitted).

A complaint of fraud must be pled with particularity, according to Rule 9(b). "To satisfy the heightened pleading standard of Rule 9(b), a plaintiff must state with particularity 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" Beasley v. FV–I, Inc., 1:13–CV–116, 2013 WL 1192018, at *3 (E.D.Va. Mar. 21, 2013) (quoting In re Mut. Funds Inv. Litig., 566 F.3d 111, 120 (4th Cir. 2009)). Failure to comply with Rule 9(b)'s pleading standard is treated as a failure to state a claim under Rule 12(b)(6). Id. (quoting Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 783 n. 5 (4th Cir. 1999)).

### III.

In its motion to dismiss, VIP argues that CS failed to meet the standard set by Rule 9(b) by pleading the factual circumstances of its counterclaims. ECF No. 16, 2. VIP also argues that CS has failed to "establish a legally cognizable cause of action" by failing to factually "substantiate a bases for fraud" on the USPTO. Id. The court's decision regarding the latter of these two objections eliminates the need to address the former.

To establish trademark infringement under the Lanham Act, a plaintiff must prove: (1) that it owns a valid mark; (2) that the defendant used the mark "in commerce" and without the plaintiff's authorization; (3) that the defendant used the mark (or an imitation of it) "in connection with the sale, offering for sale, distribution, or advertising" of goods or services; and (4) that the defendant's use of the mark is likely to confuse consumers. 15

U.S.C. § 1114(a) (2005); see Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC, 507 F.3d 252, 259 (4th Cir. 2007); People for the Ethical Treatment of Animals v. Doughney, 263 F.3d 359, 364 (4th Cir. 2001). None of these elements requires a showing of fraud. In its first counterclaim of trademark infringement, however, CS alleges that "VIP obtained a federal trademark registration fraudulently in that VIP fraudulently alleged a date of first use of the Mark almost ten years prior to its actual first use of the Mark, and for the sole purpose of infringing on Cabinet Saver's Trademark rights." ECF No. 7, 5. This claim merges the second element of trademark infringement with an allegation of fraud; in effect, CS alleges fraud in the procurement, and such a claim is subject to the heightened standards of Rule 9(b). Republic Technologies (NA), LLC v. BBK Tobacco & Foods, LLC, 262 F. Supp. 3d 605, 608–09 (N.D. Ill. 2017).

To state a cause of action for fraud, a plaintiff must plead that there was "a false representation of a material fact, made intentionally and knowingly, with intent to mislead." Sales v. Kecoughtan Housing Co., Ltd, 279 Va. 475, 481, 690 S.E.2d 91, 94 (2010). The plaintiff must also plead reliance on that false representation and resulting damages. Id. Pleading fraud in the procurement of a trademark requires proof the trademark owner made a false representation of material fact to the USPTO, and but for the USPTO's reliance on the false representation, the registration would not have been issued. eCash Technologies, Inc. v. Guagliardo, 136 F. Supp. 2d 1056, 1064 (C.D. Cal 2000).

CS's clearest deficiency in its counterclaim is its allegation that VIP "obtained a federal trademark registration fraudulently in that VIP's [sic] fraudulently alleged a date of first use of the Mark almost ten years prior to its actual first use of the Mark, and for the sole

4

purpose of infringing on Cabinet Saver's trademark rights." ECF No. 7, 5. CS's claim of trademark infringement, therefore, rests upon VIP's alleged erroneous date of first use. An erroneous date of first use, however, cannot be the grounds for such a claim. The Trademark Trial and Appeal Board (Trademark Board) has regularly ruled that "an incorrect statement of the date of first use is not material, and therefore not fraudulent, as long as the actual first use occurred prior to the application date." See, e.g., Pony Exp. Courier Corp. of Am. v. Pony Exp. Delivery Serv., 872 F.2d 317, 319 (9th Cir. 1989) ("The claim of a date of first use is not a material allegation as long as the first use in fact preceded the application date."); Lewis v. Microsoft Corp., 410 F. Supp. 2d 432, 437–38 (E.D.N.C. 2006), aff'd, 222 F. App'x 290 (4th Cir. 2007) (finding trademark infringement claims were barred by res judicata after the Trademark Board held that an incorrect date of first use was not material and did not constitute fraud); Georgia-Southern Oil Inc. v. Harvey Richardson, 16 U.S.P.Q.2d 1723 (T.T.A.B. July 19, 1990) ("Thus, the date of first use alleged by applicant in its application, even if false, cannot be said to constitute fraud on the office.").

The court takes guidance from Monster Daddy, LLC v. Monster Cable Products, Inc., in which the plaintiff, Monster Daddy, following a failed settlement agreement between the parties regarding use of the "Monster" mark, filed suit against the defendant, Monster Cable, seeking specific performance of the agreement. No. CA 6:10-1170-HMH, 2010 WL 4853661, at *1–2 (D.S.C. Nov. 23, 2010). Monster Cable responded with numerous counterclaims, including one of fraud. Id. Monster Cable alleged that Monster Daddy falsified the date of its first use of the Monster mark in its statement of use field, thus committing fraud on the USPTO. Id. at *3. The court rejected this argument, noting the

5

absence of any legal authority supporting the contention that a false date of first use could ever be material when the applicant's actual use occurred prior to the application filing date. Id. The court held that for Monster Cable's counterclaim of fraud to have facial plausibility, Monster Cable had to plead facts giving rise "to a reasonable inference that Monster Daddy failed to use the Monster mark when it filed its statement of use." Id.

The facts at hand are markedly similar. As the Monster Daddy court noted, there is no legal authority showing that an erroneous date of first use gives rise to a claim of fraud so long as the actual date of first use preceded the date of the application. See Monster Daddy, 2010 WL 4853661, at *3. Like Monster Cable, CS has pled only one misrepresentation in its counterclaim—a misrepresentation that is, by law, immaterial. An allegation that VIP did not use the "Cabinet Saver" mark before filing its application would constitute a material misrepresentation by VIP and could give rise to fraud, but CS has not pled this. See ECF No. 7, 5. CS has therefore failed to plead misrepresentation of a material fact.

Rule 9(b) requires a plaintiff plead a false representation made to the USPTO of material fact in order to state a claim of fraud on the USPTO. Marshak v. Treadwell, 58 F. Supp. 2d 551, 566 (D.N.J. 1999). CS has failed to do so, and thus its claim of fraudulent procurement of a trademark fails. CS's counterclaim of trademark infringement rests on this claim, and therefore does not meet Rule 9(b)'s standard of pleading. See ECF No. 7, 5.

CS's second counterclaim (unfair competition by VIP) incorporates by reference all allegations made in its first counterclaim and relies on VIP's use of "a false designation of origin and false or misleading representation of fact as to the origin of its goods," by using the Mark. ECF No. 7, 5. CS's claim of fraud is no more successful in the context of unfair

competition than it is in the context of trademark infringement. Therefore, CS's second counterclaim also fails to meet the 9(b) standard.[1]

### IV.

VIP's motion to dismiss is **GRANTED**. The court, however, grants CS leave to amend its counterclaims.

An appropriate **ORDER** will be entered.

Entered: 12-10-2018

Michael F. Urbanski
United States District Judge

---

[1] VIP also argues in its memorandum in support of its motion to dismiss that CS fails to plead with sufficient particularity the facts surrounding VIP's representation. ECF No. 16, 5. Specifically, VIP argues that CS does not "provide facts showing the time or place where it alleges VIP made the fraudulent representations," does not provide "any support regarding how the alleged date of first use was fraudulent," and does not "identify the VIP representative who purportedly made these representations," thus preventing a reasonable inference of intent. Id. at 6. While some of these arguments might have merit, the court declines to address them. The court need not reach a decision, given the above dismissal of the counterclaims for failure to plead a material misrepresentation as a matter of law.